## Case No. 3,858.

DEXTER et al. v. ARNOLD et al.

[2 Sumn. 108.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1834.

EQUITY—EXCEPTIONS TO MASTER'S REPORT—MORTGAGES—MORTGAGEE IN POSSESSION—RIGHTS AND LIABILITIES — FAILURE TO KEEP ACCOUNTS — OPENING ACCOUNTS — DEED OF MORTGAGED PREMISES.

1. In exceptions to a master's report, a general assignment of errors is insufficient, unless specific errors are shown.

[Cited in Greene v. Bishop, Case No. 5,763.]

2. The master was right in refusing to inquire into the original consideration of a mortgage, when this mortgage, in an account settled between the parties, was treated as a good subsisting mortgage for the full amount stated therein, and when the bill did not charge that the consideration was nominal, or that there was

[1] [Reported by Charles Sumner, Esq.]

any mistake therein, or ask for any examination thereof.

3. A mortgagee is bound to make all reasonable and necessary repairs upon the mortgaged premises while in his possession, and will be responsible for the damage occasioned by any wilful default or gross neglect in this respect. The natural effects of waste and decay, from time, he will not be bound to repair.

4. Quaere—If a mortgagee, who lays out money in permanent repairs for the benefit of the estate, may claim an allowance therefor.

5. Exceptions to a master's report must be founded on the facts stated in the report, or in the accompanying documents and proofs.

6. The master was right in refusing to open an account settled in 1801, as no leave was given to surcharge and falsify that account, and there were circumstances, which shewed, that the account had already been adjudicated in a former suit by this court.

7. The master was right in charging the estate of the mortgagee with the money received, as the consideration, on giving an absolute deed of the mortgaged premises.

8. An absolute deed of mortgaged premises given by the mortgagee operates as a conveyance of a defeasible title only, and not as a disseisin, as between the mortgagor and mortgagee.

9. A mortgagee, who keeps no accounts of the rents and profits received by him, is properly chargeable with what he may be presumed to have received, and, if in the occupation of the premises, also with an occupation rent. And the master was right in embracing all these items in an account of rents and profits received.

10. Where a mortgagee has kept no accounts of the rents and profits received by him, the master will exercise a sound discretion upon the whole evidence with regard to the amount for which he should be charged, without resorting to the standard of an occupation rent.

[Cited in Providence Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 804.]

Bill in equity to redeem a mortgaged estate. The cause, as formerly heard in this court, will be found reported in Dexter v. Arnold [Case No. 3,857]. It now came again before the court, upon the report of the master, W. R. Staples, Esq. The report was as follows:

On the 25th day, and on divers days afterwards, having been attended by counsel for the complainants, and for the defendants, said Anna and James Arnold, and having examined the evidence taken in chief in said cause, and taking the testimony of divers witnesses, produced before me, and the examinations of said Anna and James, under affirmation, upon interrogatories touching the matter directed to be inquired into; and having also examined the books, papers and documents produced by said Anna, as and for the books, papers and documents of said Thomas, relating to the subject-matter in dispute,—after due consideration of the same, I have stated the account of the amount due, upon the foot of the mortgage mentioned in the said decree, and of the rents and profits of said mortgaged premises, received by said Thomas Arnold, in his lifetime, and by said Anna, administratrix on the estate of said Thomas since his decease, allowing said

mortgagee for repairs and expenditures in the premises.

The complainants contended, that all moneys received by said Thomas Arnold, on Jonathan Arnold's account, and not accounted for, ought to be presumed to have been received on account of this mortgage or the mortgage on the "Paget Farm," so called, under the existing circumstances of the case. In pursuance of this position, they claimed the following sums, to be deducted from the original consideration of this mortgage, to wit: The sum of $430, said to have been received by said Thomas, of Vincent Gray, of the Havana, together with interest thereon; the amount of a note for £100, part of the consideration of the mortgage given by said Jonathan to said Thomas, of the Paget farm; the said note, as they contended, being charged by said Thomas to said Jonathan in the account settled between them on the 31st March, 1801, and not endorsed on said mortgage of the Paget farm, —together with the interest thereon; the amount charged by said Thomas to said Jonathan in said account, settled March 31, 1801, for premium on schooner Fame, viz. one hundred and eighty dollars, with twelve dollars interest thereon, on the ground that the same was embraced in a previous charge in said account,—with interest thereon; the amount of five hundred seventy-three dollars, eighty-seven cents, being the difference between the amount of said Jonathan's note to Joseph Rogers, and the amount said to have been received on said note by said Rogers, of said Thomas, with interest thereon. These sums I rejected, and refused to receive evidence in relation thereto, on the ground, that they entered into and made parts of the account settled between said Thomas and Jonathan on 31st March, 1801, which account has been already adjudicated upon and settled by this honorable court; and that if any claim for the same exists against said Thomas or his representatives, it is against him as agent or administrator of said Jonathan, in both which capacities the said Thomas, in his lifetime, accounted to this honorable court. Considering also, that the mortgage in this cause is credited to said Jonathan by said Thomas in said account of March 31, 1801, I have deemed it unnecessary to inquire into the original consideration of said mortgage, or to require proof of the existence or payment of the notes and acceptances charged in said account, or to enter into or state interest account in relation to said account, presuming that when said account was so settled and adjudicated upon, this item of credit was considered, that the rest of the account was adjusted in reference thereto, as the same there stands credited. The complainants also contended, that they ought to be credited with rents of the mortgaged premises for the years 1793, 1794-5-6-7 and 8. This claim I have also disallowed, on the ground,

that the mortgage was dated in 1800, and admitting that said Thomas received said rents, he was liable for them as agent, and not as mortgagee, and in that capacity has accounted for them, or been called upon to account for them to this honorable court. I have however charged the respondents with rents from 5th November, 1799, in consequence of the admission of James Arnold, in his answer, that at the settlement of said account of March 31, 1801, it was the understanding and intention of said Thomas and Jonathan, that the rents from that time should inure to the benefit of said Jonathan, under said mortgage, and in consequence of the same being credited to the account, rendered by said Anna Arnold, of the rents and profits received toward said mortgage. The complainants also claimed for "damage of the store by the entire neglect of the mortgagee in possession, to shingle the store, eight hundred dollars." The store here referred to is the store on South Main street. That the premature decay and dilapidation of said store, was occasioned by neglect to repair it, I take to be fully proved, if not admitted, by said Anna and James. Yet I have not deemed it equitable to charge them with the damages occasioned by such neglect, inasmuch as the mortgagee during the whole period of his possession of said estate, under his mortgage, was a tenant thereof in common with Asa Arnold and the heirs at law of Welcome Arnold, and it was neither proved nor suggested that he was ever requested by the other owners to join in any repairs on said estate, or that Jonathan Arnold or any of his heirs, ever intimated the propriety or expediency of making any. While on the other hand it was proved that Samuel G. Arnold, the attorney of the administrators, on the estate of Welcome Arnold, and one of the heirs at law of said Welcome, occupied the upper part of said store from 1801 to 1811 or 1812, when it had become out of repair, and leaky, and must, therefore, have been intimately acquainted with its situation, and was requested by the agent of said Thomas, afterwards, to join in repairs, and refused so to do. The complainants also claimed "the value of one third part of the Fox Point lots, part of the mortgaged premises, sold by Thomas Arnold on 21st Dec., 1810, by absolute deed." This claim was resisted by the mortgagee. Nevertheless, it has appeared to me that said sale could not have been effected by said Thomas, had not this mortgage been held by him. That his covenants of warranty are mere personal obligations, insisted upon by the purchasers to protect what they knew, was, without them, an invalid title, and voluntarily entered into by said Thomas, either to insure the sale of the other undivided part of said lots, or to accelerate the collection of his mortgage debt, that the money so received was received for the mortgagor's property. And that the effect of said sale

will be to deprive the mortgagor of part of his estate without an equivalent; and to vest the proceeds thereof in the mortgagee, without any consideration, unless the mortgagee is made to account for them toward this mortgage. For these reasons, I have allowed said claim for one third part of the amount received by said Thomas, for said lots, with interest thereon, from the day of said sale, December 21, 1810.

Much of the difficulty in ascertaining the rents and profits, with which the mortgagee ought to stand charged, has arisen from the fact that the mortgaged premises were an undivided third part of an estate. This difficulty has been increased by the following circumstances, viz. that Thomas Arnold himself was some years a tenant of a part of the estate; that Samuel G. Arnold, at one time, also occupied a part of the estate on Welcome Arnold's right, that sometimes Thomas Arnold received rents on Asa Arnold's right, sometimes charged rents to Samuel G. Arnold & Co.; at other times Samuel G. Arnold and Company received rents for Jonathan Arnold; sometimes Jonathan Arnold received rents himself of the tenants, and more than all, from the fact that Thomas Arnold kept no regular account of the rents he received. The account, presented by the administratrix on the estate of said Thomas, is made up, from the rent-rolls of said Thomas, his accounts with the tenants, his cash books, and credits given him by tenants in their accounts settled. I did not, therefore, consider myself bound by the account so presented, especially when on inspecting it and comparing it with the vouchers from which it was made, I discovered some inaccuracies and omissions. Nor could I satisfy myself with what rents said mortgagee should stand charged, without first estimating the fair rent of the whole premises, under their peculiar circumstances, and then charging him with one third part thereof. This course appeared to me the more proper, from the fact that certain rents were received by Samuel G. Arnold and Company, on account of Jonathan Arnold, which were relinquished by Thomas Arnold in the compromise settlement made between said Thomas and Samuel G. on the 13th day of June, 1823, the amount of which could not be ascertained by the evidence in the cause.

The estate consisted of a lot of land, forty feet in breadth, extending westward from South Main street to the channel of the river. On the east end is a store two stories high, about sixty-five feet in length, and twenty in width, with a cellar under the whole length of it. Towards the west end was an old store, two stories high, about twenty by thirty feet. To the west of this was a cooper's shop. When these buildings were erected, has not been made certain by any proof, nor the state of repair in which they were at the date of the mortgage. A hatter's shop was erected on the front of said lot, after the

date of the mortgage; but when or by whom no evidence has been produced to me. The cooper's shop is called, in the testimony, a very old building. This was either carried away by the "gale" in 1815, or demolished in the following year, when South Water street was opened. The old store was much injured in "the gale," the lower story being almost wholly demolished by it. But it was standing when partition was made in 1828. The store on South Main street was abandoned as untenantable in 1823, though the cellar under it, to the present time, has been occasionally occupied for storing such goods as would take no injury from wet. In 1828, a partition of said estate was made on the suit of the children and heirs at law of Samuel G. Arnold, by which the eastern part of said lot, extending back sixty-five feet from South Main street, and the north half of the wharf, being about twenty by twenty-five feet, was set off for the third part of the estate that belonged to Jonathan Arnold.

In ascertaining the fair rent of these premises, I have divided the time into five periods. The first of which extends from November 5, 1799, to November 5, 1805. During this period Paul and Hull, or Peleg Hull, rented the front shop in the store on South Main street at $80, and the room back of it at $30 per year. Samuel G. Arnold & Co. occupied the other parts of said building, but at what rent, is not shown. I have supposed it to be worth at least $75 per year, as afterwards the cellar alone was charged him by Thomas Arnold, at the rate of $36 per year. The old store was occupied by Thomas Arnold with one third the wharf; for this I have supposed $90 per year was a reasonable rent, as that amount was afterwards charged by said Thomas to subsequent tenants, and as the cooper's shop was occupied from 1802 at the rate of $25 per year. I had no hesitation in charging the mortgagee with the same rent during this period. I have, therefore, considered the fair rents of the mortgaged premises, during this term, to be three hundred dollars, and that the mortgagee of the undivided third part thereof, ought to be charged with one third part thereof.

The second period extends from November 5, 1805, to December 21, 1810; five years, one month, and sixteen days. During this period, Paul and Hull, or Peleg Hull, rented the same part of said premises, and at the same rent, viz. $110 per year. The old store continued to be occupied by Thomas Arnold, or rented to other tenants at the same rent, viz. $90 per year. The cooper's shop was rented for $25 per year, until April 1, 1807, and from that time to January 28, 1808, at $15 per year; the reduction being made in consequence of the increased state of decay of said building. After 1808 there is no evidence of any rent received for it by any person. I have estimated the fair average yearly rent during this period, to be $10 per year. The second floor and cellar of the store on South Main street was occupied or rented by Samuel G. Arnold and Company, during the whole of this period, and I could find no cause to change the amount of rent. I have, therefore, considered the fair rent of the mortgaged premises during this period, to be two hundred eighty-five dollars, one third part of which ought to be charged the mortgagee.

The third period extends from December 21, 1810, to December 21, 1823, being thirteen years. The lower part of the old store was rented until December 31, 1811, at $60 per year, and the upper loft until November 21, 1821, at $30 per year; the wharf was rented from March 11, 1822, to the end of this period, at $80 per year. I have considered $70 per year as a fair average rent of this part of said premises, during this period. Peleg Hull continued in the occupation of the front store on South Main street until 1823, at $80 per year; and in the occupancy of the room back of it until 1818, at $30, and from then until 1823, at $15 per year. I have considered one hundred dollars to be a fair average yearly rent of this part of said premises, during this period. The rent of the upper room and cellar of this store. I have estimated at $36 per year. The hatter's shop was probably built about 1811, by some tenant who was chargeable with the ground rent only, until he abandoned it to the owners of the land. In 1819, I find it rented for $60 per year. I have assumed $30 to be a fair average yearly rent during this period. The yearly rents from 1810 to 1823, of the whole premises, I have estimated at $236, one third of which should be charged said mortgagee.

The fourth period extends from December 21, 1823, to the time partition was made of these premises, in 1828, being four years and six months. The wharf and old store were rented from the commencement of this period, to March 11, 1826, at $80 per year, and from that time until partition was made, at $150 per year. I have considered $110 to be a fair average yearly rent for the same during this period. The store on South Main street remained, during this period, generally unoccupied; as the cellar under it was occasionally occupied, a fair rent of that part of the premises, I have estimated to be $40. The rent of the hatter's shop I have also estimated at $30. I have, therefore, considered the fair average yearly rent of the whole premises, from 1823 to 1828, to be $180, one third part of which ought to be charged said mortgagee.

The fifth and last period extends from the time partition was made, to June 15, 1833, being five years eleven months and twenty-five days. I have considered the store on South Main street with the cellar under it, to be of the yearly value of forty dollars, the hatter's shop to be of a yearly value of thirty dollars, and the north part of the wharf to be of the yearly value of twenty dollars; that being the sum for which the

same was rented in 1832. These comprehending the part of said premises, that was set off for Jonathan Arnold's share in said estate, the said amounts being ninety dollars per year, I have considered ought to be charged to said mortgagee.

As I found, on stating the account on these principles, that the rents to be accounted for by said mortgagee, up to the 21st day of December, 1810, together with the amount on that day received by him, on the sale of the Fox Point lots, exceeded the amount of interest due on said mortgage debt, and the repairs on said estate and interest thereon. up to said date, by the sum of $426.81, I deducted said sum of $426.81 from the principal, and allowing interest thereon, with interest also on the repairs. made on said estate up to the fifteenth day of June, 1833; I report that there is the sum of one thousand, three hundred and sixty-six dollars, thirty-six cents. due on said mortgage. My principal reason for reducing the rents in the second, third, fourth and fifth periods. was the increased dilapidation of the buildings from want of repairs; but the opening of South Water street in 1816, though it added much to the value of the whole estate, decreased its productiveness, as the most valuable part of the buildings stood on South Main street.

To this report exceptions were filed by the plaintiffs and defendants. Those of the plaintiffs were as follows:

1st. For that the said master, has stated and certified in said report. that there is due on the said mortgage, mentioned in plaintiff's bill, the sum of $1366.36. whereas, he ought, as the plaintiffs are advised, to have reported that there is nothing due upon said mortgage.

2d. For that the said master, in said report, has stated that he deemed it unnecessary to inquire, and he did not inquire into the original consideration of said mortgage, whereas the bill of the plaintiffs. charges that the nominal consideration mentioned in said mortgage, was never received by the mortgagor. who ignorantly signed said mortgage, and the said supposed consideration was stated in said mortgage. to consist of certain supposed and undescribed notes and acceptances, alleged by the mortgagee to have been taken up by him, which the plaintiffs did and do deny that he did take up. so as to be a creditor of the mortgagor therefor. at the date of said mortgage to the amount of said nominal consideration. And the said master ought, as the plaintiffs conceive. to have inquired into said consideration.

3d. For that the said master, in said report, and in the account annexed thereto, has allowed to the defendants, the full amount of said supposed consideration, and interest thereon, under the supposition. as by him in substance stated, that he was concluded thereby. whereas the said master, as the plaintiffs conceive. ought not to have allowed the same.

4th. For that the said master, in said report and account, has made a deduction, from the annual value and rent of the said mortgaged premises, as they were received by the mortgagee, on the ground that the same or parts thereof, became untenantable for want of repairs, while in the hands of said mortgagee and his representatives. Whereas the same were received in good tenantable order and repair, by said mortgagee, as appears by said report, and the exhibits accompanying the same, and were partly rented and partly used by the said mortgagee and his representatives, and the said master ought, as the plaintiffs conceive, to have reported and charged in said account. against said defendants, the annual value and rent thereof, for the whole time of possession by said mortgagee and his representatives, according to the value and rent thereof, at the time he took possession thereof, deducting a reasonable sum for repairs.

5th. For, that the said master. in said report and account, has reported and charged nothing against said mortgagee and defendants. for the destruction and dilapidation of the buildings on said mortgaged premises, although he has therein stated, that such destruction and dilapidation took place, while the premises were in the possession of said mortgagee and his representatives. Whereas he ought, as the plaintiffs conceive, to have charged in said account to said defendants. or credited said premises, and allowed and reported in favor of the plaintiffs. a sum equal to the damages by such destruction and dilapidation. with interest.

6th. For, that the said master has disallowed, and as stated in said report, refused to receive evidence, in relation to the charge of a note for £100, and interest thereon, exhibited and claimed by the plaintiffs, which note, as the plaintiffs allege, has been twice paid to said mortgagee, and has not been accounted for by him, whereas the said master, as the plaintiffs conceive. should have charged the defendants with said sum and interest.

7th. For, that the said master in said report and account, has not charged the defendants with the sum of $192, and interest, and refused to receive evidence in relation thereto, which sum was paid to said mortgagee. under a mistake and error, as for premium and interest, for insurance on the schooner Fame, when no such sum was due for such insurance. Whereas the said master, as the plaintiffs conceive. ought to have received evidence of said charge. and to have charged said sum and interest thereon, to the defendants in said account.

8th. For, that the said master, in said report and account, has not charged the defendants with the sum of $573.87½, paid to said mortgagee through error, as for money advanced by him, to take up said mortgagor's note to Joseph Rogers, being an excess paid to said mortgagee by said mortgagor, over and above the sum so advanced by said mortgagee, and refused to allow the same, and to

receive evidence thereof, on the grounds that the same had been already settled, and adjudicated and accounted for, by and between said mortgagor and mortgagee, whereas such is not the case, and said master ought to have received evidence in relation to said charge, and to have charged the defendants therewith, and with interest thereon, in such account.

9th. For, that the said master has certified in said report, that he refused to allow or to receive evidence, in relation to all moneys received by said Thomas Arnold (the said mortgagee), on Jonathan Arnold's account, and not accounted for, and that said master did refuse to allow such moneys received by said mortgagee, although from all the accounts and exhibits, offered and shown by the plaintiffs and defendants, it appeared that moneys had during said mortgagee's possession, been received by said Thomas, of said Jonathan, and his estate which were not appropriated, when received to any other account, than that of this said mortgage, which at the time of such reception of moneys, was the only undischarged evidence of claim or demand, on the part of said mortgagee against said mortgagor, the said Paget's mortgage having been adjudged by this honorable court to have been overpaid, and which moneys so received, were never accounted for, or credited by said mortgagee in any other account. Whereas the said master, as the plaintiffs conceive, ought to have received evidence of, and allowed the plaintiffs' charges, for said moneys and interest thereon.

10th. For, that the said master has, in said report and account, disallowed the sum of $430, and interest charged by the plaintiffs, on the ground that the same was settled in a certain account of March 31, 1801, between the mortgagor and mortgagee, whereas it appeared that said sum, (being a balance of $500, received of one Vincent Gray after deducting a credit,) was received by said mortgagee, of the proper moneys of the mortgagor, after the said 31st March, 1801, and did not enter into said account, and the same ought to have been charged by said master, to said defendants, with interest.

11th. For, that the said master, in said report and account, has charged interest on the consideration of said mortgage, from a time anterior to that, when there was any balance due from said mortgagor to said mortgagee, for and on account of any notes or acceptances, or payments therefor, secured or intended to be secured by said mortgage, and anterior to the dates and payments by the mortgagee, of any such notes or acceptances; and rejected the plaintiffs' evidence, in relation thereto, and declined entering into any interest account, in respect of the same, or to ascertain the respective times, for which interest should be charged on said notes and acceptances. Whereas the plaintiffs conceive, that said master should not have charged interest on said sum from said time, and should

have received the evidence aforesaid, and stated an interest account in relation to said payments, and should have treated said mortgage as collateral security, for sums which, were to be originally and truly evidenced by other vouchers.

12th. For, that the said master, previous to making said report, did not require of the defendant, Anna Arnold or James Arnold, the production of the cash books of said mortgagee, of the years previous to 1806, which were called for by plaintiffs, although it was admitted by said Anna in her answers to plaintiffs' interrogations exhibited with said report, that such cash books did exist, and were not out of her reach or power.

13th. For that the said master, at the hearing, ordered upon argument, that certain books, of the said mortgagee, should be produced by said Anna Arnold, administratrix, under a call therefor by the plaintiffs—which said books, were accordingly brought before him, at the hearing, but the said Anna and James Arnold, refused to permit the plaintiffs or their counsel, to open or look into the same, and the said master did not, though requested by the plaintiffs, require said books so produced, to be opened for the inspection of the plaintiffs, as the plaintiffs conceive he should have done.

14th. For, that it is not stated in said report, when nor for what reason, the said Samuel G. Arnold refused to join in repairs, although it is stated, that the said premises had a long time previous, been suffered to be out of repair, without any attempt of said mortgagee to repair the same, and although in fact the said Samuel G. made no objection, except that he wished the title or proportions of ownership, to be first settled; and, although it does not appear by said report, that the mortgagee at any time did what he could, towards keeping said premises in repair. And, although the said mortgagee was at said times, and during his possession, also agent of the estate of the late Welcome Arnold, and had power as such to repair.

15th. For, that the said master declined receiving evidence in relation to the errors, in the said account of March 31, 1801, and has not allowed to the plaintiffs, the sums shewn to be errors in said account, although the said account was produced at the hearing of the defendants Anna and James Arnold, for the purpose of proving the reception and full amount of the consideration of said mortgage and the payments of notes and acceptances, mentioned in said mortgage by said mortgagee.

16th. For, that the amount credited by said master, for the annual value of the rents and occupation of said premises, is by far below the real annual value thereof, and as the plaintiffs conceive, much larger annual sums ought to be credited to said estate therefor in said account.

The exceptions filed by the defendants, were as follows:

1st. For, that it appears in and by said report and account, thereunto annexed, that the said master has allowed said complainants, for the one third part of the amount received by said Thomas, for the sale of the Fox Point lots, whereas the said complainants, ought not to have been allowed any part of said amount.

2d. For, that it appears in and by the decree of said court, that the master was ordered to take an account of the rents and profits, received by the said Thomas: Whereas the said master has charged the estate of said Thomas, with a large amount of rents, which have never been received by said Thomas, or his said administratrix.

3d. For, that the said master has allowed a much larger amount of rents, than are contained in the account of the administratrix, and has reported, that on comparing said account with the vouchers, he found several inaccuracies and omissions, whereas he should have allowed no more rents than are credited in said account, and should have reported that said account was correct, was confirmed by the vouchers and by the affirmation of the administratrix, and that there was no evidence in the cause shewing any inaccuracies or omissions in said account.

4th. For, that the said master, has allowed one third of what the whole premises would have let for, according to his estimate, whereas, if he went according to an estimated rent, instead of the actual amount received as credited, in the account of the administratrix, his estimate should have been of what an undivided third part would have let for at auction.

5th. For, that the said master has reported that said Thomas Arnold, kept no regular account of the rents he received, whereas he should have reported that the rent-rolls, cash book, and other books of account of said Thomas, produced before the master, exhibited a full, true and exact account of all the rents received by said Thomas, from said mortgaged premises.

6th. For, that the said master, in estimating the rent to be allowed for the first period, has taken into consideration a charge of $36 per year, which he reports as made by said Thomas against Samuel G. Arnold, for the rent of cellar of the store on South Main street; whereas the cellar referred to in said charge, is the cellar of an old store, belonging to said Thomas, above the bridge.

7th. For, that the said master, in estimating said rents, has estimated the rent of the whole premises, and for long periods of time, by what particular parts let for, for short periods of time; whereas the estimate should have been, according to what an undivided third of the premises would have rented for, during the period for which the rents are charged.

8th. For, that the said master in estimating said rents, has taken the rents of late periods, as the rule to fix the estimate for much earlier periods; whereas, the rents should have been allowed according to what they would have been, during the period for which they are allowed.

9th. For, that the said master has allowed, for a continuous occupancy of said premises, for thirty-three years; whereas he should have deducted the time during that period, when said premises may reasonably be supposed to have been unoccupied.

10th. For, that the master has reported no allowance to the mortgagee, for the hatter's shop on said premises; whereas, he ought to have reported an allowance for the fair value of said shop; or to have deducted such a sum, from the rents charged to the mortgagee, as such mortgagee reasonably allowed the tenant, for building the same.

11th. For, that the said master has allowed $40 per year, for rent of store and cellar on South Main street, from 1823 to the time of making his report, whereas he should have reported that after the year 1823, the said store and cellar were in such a state of decay, that they were untenantable, and that no rent was received for them by the mortgagee, and now ought to be charged the mortgagee, since that period.

J. L. Tillinghast, for plaintiffs.
Richard W. Greene, for defendants.

STORY, Circuit Justice. The exceptions have been argued by the learned counsel at large; but our opinion will be briefly stated upon all of them, as we do not think, that they involve any serious difficulty. We shall first consider the exceptions of the plaintiffs.

1. The first exception is utterly unmaintainable. It is too loose and general in its terms, and points to no particulars. It comes to nothing, unless specific errors are shown in the report; and those errors, if they exist, should have been brought directly to the view of the court in the form of the exception itself. At present it amounts only to a general assignment of errors, and the argument on this exception has shown none.

2 and 3. The second and third exceptions apply to the refusal of the master to inquire into the original consideration of the mortgage. Under the circumstances, the master was perfectly right. In the first place, in the account settled between the original parties, on 31st of March, 1801, the mortgage was treated as a good subsisting mortgage for the full amount of the debt stated therein. In the next place, the bill does not charge, that the consideration of the mortgage was nominal, or less than the amount stated therein; or that there is any error or mistake therein; neither does it ask for any examination or overhauling of the original consideration upon any alleged error or mistake. It was clearly, therefore, a matter not properly in issue before the master. See Chambers v. Goldwin, 9 Ves. 265, 266.

4. The fourth exception is on account of the master's having made a deduction of the sup-

posed rent, upon the ground, that the premises were out of repair, and partly untenantable, while in possession of the mortgagee and his representatives. The argument seems to proceed upon the ground, that the mortgagee was bound to keep the premises in good repair; and therefore ought to be accountable for such rents, as might have been obtained, if he had done his duty in regard to repairs. We know of no universal duty of a mortgagee to make all sorts of repairs upon the mortgaged premises. while in his possession. He is bound to make reasonable and necessary repairs. But what are reasonable and necessary repairs must depend upon the particular circumstances of the case. If a house is very old and dilapidated, he is not bound to go to extraordinary expenses to put it into full repair, if those expenses will be greatly disproportionate to the value of the estate, or to his own interest therein. Certainly it cannot be pretended, that he is bound to make new advances on the estate. In Godfrey v. Watson, 3 Atk. 518, Lord Hardwicke said, that a mortgagee in possession is not obliged to lay out money further than to keep the estate in necessary repair. In Russel v. Smithies, 1 Anstr. 96,- it was decided, that a mortgagee, after long possession, was not bound to leave the premises in as good a condition as he found them. The fact also, that there has been a diminution of value of the rents, was there declared not to be sufficient proof of a want of proper repairs. See Chambers v. Goldwin, 9 Ves. 265, 266. It is quite a. different question, whether, if the mortgagee lays out money in proper permanent repairs for the benefit of the estate, he may not be allowed to claim an allowance therefor. That is a point dependent upon other considerations. See 1 Pow. Mortg., by Coventry & Rand, 189a; 3 Pow. Mortg. 956. note a; Saunders v. Frost, 5 Pick. 259; Moore v. Cable, 1 Johns. Ch. 385; Trimleston v. Hamill, 1 Ball & B. 385; Marshall v. Cave, cited 3 Pow. Mortg. 957a. But where a mortgagee is guilty of wilful default or gross neglect as to repairs, he is properly responsible for the loss and damage occasioned thereby. That was the doctrine asserted in Hughes v. Williams, 12 Ves. 495.[2] And there is the stronger

[2] S. P. Wragg v. Denham, 2 Younge & C. 117, 121. In the latter case, Mr. Baron Alderson, in delivering his judgment, said: "It is clear, that a mortgagee ought not to be charged with deterioration arising in the ordinary way, by reason of houses and buildings of a perishable nature, decaying by ruin, as was the case in Anstruther," (above cited). He added, "I think, also, that a mortgagee ought not to be charged exactly with the same degree of care as a man is supposed to take, who keeps the possession of his own property. But if there be gross negligence, by which the property is depreciated in value, the mortgagee, who is in possession, is trustee to the mortgagor to that extent, that he ought to be made responsible for the deterioration during the time of his possession." (The above has been added since the original opinion was given by Mr. Justice Story.)

reason for this doctrine, because it is also the default of the mortgagor himself, if he does not take care to have suitable repairs made, to preserve his own property. In the present case, however, the point does not arise, for there is no evidence in the master's report, which establishes any fact of wilful default or gross negligence in the mortgagee.

5. These remarks dispose also of the fifth exception, which is founded upon the supposed dilapidations of the buildings, while in possession of the mortgagee. There is no proof whatever, that these were caused by his wilful default or gross negligence; but they were the silent effects of waste and decay from time.

6, 7, 8, 10. The sixth, seventh, eighth, and tenth exceptions are disposed of by two simple considerations. (1.) They all relate to matter which had been already disposed of in a former suit. Dexter v. Arnold [Case No. 3,856]. (2.) If Thomas Arnold (the intestate) was accountable at all for any of these matters, he was so in a suit brought against him as agent or administrator of Jonathan Arnold, and not in this suit, which is merely a bill to redeem a mortgage.

9. The ninth exception admits of the same answer, with this additional consideration, that the facts referred to in it are not stated in the master's report.

11. The eleventh exception proceeds upon the objection that the master has allowed interest, where none was due. This exception proceeds upon the supposition, that the second and third exceptions were well founded. We have already decided, that the master was right in holding the consideration stated in the mortgage deed to be the true sum due, as ascertained in the account settled in 1801.

12. The twelfth exception is, because the books of Thomas Arnold were not produced before the master, or required by him to be produced. This is founded in a clear mistake; for the affidavits of Anna Arnold and James Arnold establish the fact, that they were produced.

13. The thirteenth exception is to the supposed denial to the plaintiffs of the right of examining the books of Thomas Arnold, produced under notice before the master. This exception has no facts, on which to rest it in the master's report. The plaintiffs had no right to examine those books generally; but only such parts as related to entries, charges and accounts relative to the matters in controversy in the suit. If we pass aside from the master's report, it appears by the affidavits, already alluded to, that a full examination, as to these matters, was allowed, so far as any of the books contained entries, charges, or accounts relative thereto.

14. The fourteenth exception is, that the report states no reason for the refusal of Samuel G. Arnold to join in making repairs on the premises. That was not necessary. It was mere matter of evidence for the

consideration of the master, in examining the point, whether there was any wilful default, or gross negligence of the mortgagee in not making repairs upon the premises.

15. The fifteenth exception is to the refusal of the master to open the account settled in March, 1801. No leave was given to surcharge or falsify that account before the master; and after the long lapse of time and the circumstances stated by the master, that that account had already been adjudicated upon by this court in a former suit, we have no doubt, that he was right in his refusal to open the account. See 1 Pow. Mortg., by Coventry & Rand, 390a, note; Chalmer v. Bradley, 1 Jac. & W. 66.

16. The sixteenth and last exception is, that the rents allowed by the master are too low. There is no evidence of that; and we are well satisfied with his report on that head.

Let us in the next place proceed to the consideration of the exceptions of the defendants.

1. The first exception is, because the master has charged Thomas Arnold's estate with one third of the amount received by him upon the sale of the Fox Point lots. These lots were a part of the premises included in the mortgage now in question; and Thomas Arnold had sold them in December, 1810, as his own property, by an absolute deed. In that deed there is a covenant of general warranty. The argument of the defendants is: First, that this covenant of warranty formed a part of the consideration and price given by the purchaser for the store lots; and secondly, that as the conveyance was absolute, and not an assignment of the mortgage to the purchaser, the representatives of Jonathan Arnold are not now entitled to any part of that price. We think, that the master was right, and that the reasons stated by him for his judgment are sound. Thomas Arnold, the mortgagee, could not lawfully sell this one third of the premises except under his mortgage. In selling an absolute estate to the purchaser, he was guilty of a fraud and wrong upon the mortgagor; and he ought not now to be permitted to take any benefit or advantage from that misconduct. The covenant of warranty makes no difference in the principles applicable to the case. The deed, though absolute in its form, operated as a conveyance of a defeasible title only to the purchaser as to this one third, and not as a disseisin, as between the mortgagor and mortgagee. The case is precisely the same, in legal effect, between the present parties, as if the mortgagee had elected to sell the one third for the benefit of the mortgagor, who subsequently adopted the act.

2. The second exception is, that the decree was, that the master should take an account of the rents and profits received, by the mortgagee, whereas the master has allowed rents and profits not received by him. The master was right. In the first place the mortgagee kept no proper accounts of the rents and profits received by him; and, therefore, upon general principles, he was properly chargeable with what he might have received, and must be presumed to have received. In the next place, if the mortgagee was in the personal occupation of the premises, or of any part thereof, he was justly chargeable with an occupation rent, which might properly be considered, under such circumstances, as received by him, in the sense of the decree. See Wilson v. Metcalfe, 1 Russ. 530; 3 Pow. Mortg., by Coventry & Rand, 946a, 948b, 949, and note. There is more of technical nicety than solid justice in this exception, and we should not be disposed to encourage it, when it had no bearing on the merits.

3. The third exception is, that the master has allowed a much larger amount of rents than is contained in the accounts of the administratrix of the mortgagee, and admitted to have been received by him. We are of opinion, that the master was right, for the reasons stated by him. The mortgagee kept no regular accounts; and the master has, therefore, been compelled to exercise a sound discretion upon the whole evidence as to the amount, with which he should be charged for rents and profits. The doctrine contained in Hughes v. Williams, 12 Ves. 493, and in Williams v. Price. 1 Pow. Mortg., by Coventry & Rand, 949a. note, 1 Sim. & S. 581, and Anon., 1 Vern. 45. shows the true grounds, on which courts of equity proceed in cases of this nature.

4. The fourth exception insists, that the master should not have estimated the rents, for which the mortgagee is charged upon his general judgment; but should have charged only such a rent as might have been obtained by a letting at public auction. We think otherwise. The master was bound to charge the mortgagee with a reasonable rent. What, under all the circumstances, was a reasonable rent was matter for the exercise of a sound discretion, upon all the circumstances of the case. An auction rent would not in many cases afford either a just or a satisfactory standard of the real value, for which the premises might be let, or at which the mortgagee should be entitled to occupy them.

5. The fifth exception is, that the master has reported, that Thomas Arnold kept no regular accounts, which is an incorrect statement. We see no proof of that. The master was the proper judge of that fact upon examining the books and the other evidence in the case. There is no evidence before us, that establishes in the slightest degree, that his conclusion was incorrect.

6. The sixth exception is founded on the supposed incorrectness of the charge of cellar rent. But there is not any evidence whatsoever upon the face of the report, which shows any such error of the master;

and, therefore, the report must stand. We cannot presume errors, or go into evidence in support of them, which was not laid before the master, or brought by him to the notice of the court. Exceptions must be made to matters apparent upon the face of the report, or upon the accompanying documents and proofs laid before the court upon the allegations and objections of the parties.

7, 8, 9, 10, 11. All the other exceptions are founded in objections to the master's estimate and allowance of rents charged against the mortgagee. We are of opinion that, upon the circumstances stated in his report, that estimate was perfectly just and reasonable. It was a matter for his judgment; and there are no facts in the case, which impugn the propriety or soundness of his conclusions.

Upon the whole our judgment is, that all the exceptions on both sides ought to be overruled, and the report ought to stand confirmed.

Decree: This cause came on to be heard on the report of the master, and the exceptions filed by the parties, and was argued by counsel, on consideration whereof it was ordered, adjudged, and decreed by the court that the exceptions, filed by the parties respectively, be, and the same are hereby overruled, and that the report of the master do stand confirmed, and thereupon it is further ordered by the court, that the plaintiffs be at liberty to redeem the said premises by paying to the defendants the said sum of $1366.66, being the sum reported by the said master to be due on the said mortgage (together with interest thereon until the same is paid at six per cent.), within ninety days from the day of rendering of this decree; otherwise, that plaintiffs be foreclosed of their right of redemption. And if any of the plaintiffs shall pay towards the redemption of the said mortgage more than his proportion of the money due thereon, he shall be deemed to have a lien thereon to the extent of the moneys so paid by him more than his proportion thereof, and that the plaintiffs do recover their full costs in the premises.

Decree accordingly.