# RICHARDSON v. VAN AUKEN.

EQUITY PLEADING AND PRACTICE ; AUDITOR'S REPORT, EXCEPTIONS
TO ; PRESUMPTIONS ; TRUSTEES ; EVIDENCE.

1. General exceptions to an auditor's report, as that the auditor in
certain schedules failed to give credit to a decedent's estate
for all the money paid out by him during his lifetime, and that
the auditor's conclusions of fact are not justified by the testi-
mony, are insufficient. Such exceptions must point out specifi-
cally the error or omission excepted to.
2. The findings of an auditor or master, confirmed by the lower court,
are to be taken as presumptively correct, and will be permitted
to stand unless some obvious error has been committed.
3. Persons in fiduciary relations to others must keep distinct and
accurate accounts, and render them whenever legally de-
manded ; and the *onus* is on them to show how the estate has
been administered and to what extent they are entitled to
acquittance.
4. If full and accurate accounts have not been kept by such persons,
all presumptions are to be indulged adversely to them, and all
obscurities and doubts are to be taken most strongly against
them.
5. In a proceeding in equity for an accounting against the estate of a
deceased trustee, a letter written by him to the widow of one
of his *cestui que trusts*, explaining and justifying his conduct,
is inadmissible in evidence.

No. 372. Submitted December 10, 1894. Decided January 21, 1895.

HEARING on an appeal by the defendant from a decree
ratifying a report of the auditor in a suit for an accounting.
*Affirmed.*

The COURT in its opinion stated the case as follows:

The bill in this case was filed by the present appellee,
Kate A. Van Auken, against the appellants, to procure a
declaration of trust in respect to certain real estate held by
the late George W. Adams, deceased, and for an account, for
and in respect of the rents and income of such property, that

5 Ct. App.—14

came to the hands and control of said George W. Adams in his lifetime, as trustee and managing agent of the complainant.

The bill was answered by the defendants, the widow and heirs at law, and personal representatives, of George W. Adams, deceased, and a large mass of testimony was taken. And besides the oral testimony of witnesses, many letters that had passed between the said George W. Adams and his mother and sister, in regard to the property, and the fiduciary relation that subsisted between them, were produced and put in evidence.

It is alleged that George W. Adams died intestate in October, 1886, and that his widow, Jane L. Adams, and Henry L. Adams, became his administrators, and that this suit was brought against the widow and heirs at law of the deceased and against his personal representatives, and that during the pendency of the suit, Francis A. Richardson became substituted as one of the administrators in the place of Henry L. Adams, removed.

After the testimony was taken and returned, the court below, on consideration of the evidence, on the 20th of March, 1889, passed a decree, settling the principles upon which an account should be stated, and referred the cause to the auditor of the court to state and report an account, upon the principles stated in the decree, based upon the evidence in the cause. The auditor proceeded to state an account as directed; and upon full and exhaustive examination and analysis of the evidence, embodied in the report, he reached certain conclusions as to the state of the account as between George W. Adams and his sister, the complainant; and upon the filing of which report and accompanying accounts stated, the appellants excepted thereto. The exceptions were heard, and were overruled by the court; and a decree was entered upon the auditor's report, on the 7th of July, 1894, in favor of the complainant against the surviving administrator of George W. Adams, deceased, for the

sum of $2,160, with interest thereon from the 10th of October, 1886, and costs.

*Mr. Reginald Fendall* and *Mr. Henry E. Davis* for the appellants.

*Messrs. Shepperd & Lavender* and *Mr. Thomas C. Taylor* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

There has been an objection taken to the generality and want of specification in the exceptions to the auditor's report. And while we have declined to dismiss the appeal because of such defect, we must say of the exceptions, that they are entirely too general and indefinite. They amount to nothing more than a mere general assignment of error, without any specification in what the error consists. They simply assert generally that the auditor in his schedules A and B had failed to give credit to the estate of George W. Adams for all the money that was expended and was paid by the deceased in his lifetime; and that the auditor has omitted from said schedules A and B large sums of money paid by the said Adams upon both said accounts, and for which the said auditor has allowed his estate no credits; and, further, that the auditor's conclusions of fact in his said report are not justified by the testimony. On such exception there is nothing to direct the attention of the court to any particular omission or error; and upon such general exception the court is required to go over anew the entire case, wholly without the aid of the auditor's examination and report. Such a practice the court cannot sanction.

In the case of *Dexter* v. *Arnold*, 2 Sum. 108, the first exception by the plaintiff to the master's report, at page 117, was in these terms: "1st. For that the said master has stated and certified in said report, that there is due on the said mortgage, mentioned in the plaintiff's bill, the sum of

$1,366.36, whereas he ought, as the plaintiffs are advised, to have reported that there is nothing due upon said mortgage." In passing upon this exception, Mr. Justice Story said : " The first exception is utterly unmaintainable. It is too loose and general in its terms, and points to no particulars. It comes to nothing, unless specific errors are shown in the report; and those errors, if they exist, should have been brought directly to the view of the court in the form of the exception itself. At present it amounts only to a general assignment of errors, and the argument on this exception has shown none."

Nor is the rule there laid down more strict than the established practice required. In the case of *Story* v. *Livingston*, 13 Pet. 359, 366, upon a general exception, the court said that " exceptions to a report of a master must state, article by article, those parts of the report which are intended to be excepted to ; " and the court cite with approval the case of *Wilkes* v. *Rogers*, 6 John. 566, where it was held that exceptions to reports of masters in chancery are in the nature of special demurrers, and the party objecting must point out the error, otherwise the part not excepted to will be taken as admitted.

And so in the case of *Green* v. *Bishop*, 1 Cliff. 186, 191, it was held by Mr. Justice Clifford that " general allegations of error, without pointing to any particulars, are clearly insufficient, for the reason that, if allowable, the losing party might always compel the court to hear the case anew, and should that practice prevail, references such as made in that case would become both useless and burdensome, as they would only operate to promote delay and increase the expenses of litigation, without relieving the court from any of the labor of the trial or ever accomplishing anything of value to either party."

And this rule of practice has been recently reaffirmed by the Supreme Court of the United States, in the most unqualified terms, in the case of *Sheffield, &c., RR. Co.* v. *Gordon*, 151

U. S. 285, 290, where the authorities, which we have just cited, were quoted with approval.    In that case the court said : " Proper practice in equity requires that exceptions to the report of a master should point out specifically the errors upon which the party relies, not only that the opposite party may be apprised of what he has to meet, but that the master may know in what particulars his report is objectionable, and may have an opportunity of correcting his errors or reconsidering his opinions.    The court, too, ought not to be obliged to rehear the whole case upon the evidence, as the main object of a reference to a master is to lighten its labors in this particular."    The same practice of disallowing general and indefinite exceptions to the report of a master, or of an auditor who performs the functions of a master, prevails in the courts of Maryland and of this District.    Alex. Ch. Prac. 127.

This rule requiring exceptions to be specific and definite in pointing out the supposed errors in the report, has a close logical relation to another rule of practice equally well established, and that is, that the findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law, or the principles of the decree under which he acts, or some important mistake has been made in the evidence, and which has been clearly pointed out and made manifest. This rule has been repeatedly affirmed by the Supreme Court of the United States, and is one of general application in the equity practice, both in the Federal and State courts of the country.    *Tilghman* v. *Proctor*, 125 U. S. 136 ; *Evans* v. *State Bank*, 141 U. S. 107 ; *Crawford* v. *Neal*, 144 U. S. 585 ; *Furrer* v. *Ferris*, 145 U. S. 132.

We might stop here, and affirm the decree appealed from, upon the application of the principles just stated, without further comment or discussion.    But we have thought proper to turn to the evidence, and have examined it, in connection

with the findings of the auditor, to ascertain whether there is any such obvious error in the conclusions of that officer, as is alleged to exist by the counsel for the appellant.

That much of the evidence is vague and uncertain, and much of it not at all admissible, is quite apparent. But it is clear that George W. Adams, deceased, from the time of the death of his father, in 1862, to the time of his own death, in 1886, stood in strict fiduciary relations to his mother, the guardian of his sister, the present complainant, and to the complainant herself; managing and controlling all the small property interests that they possessed. The larger portion of the property in which they were interested he held in his own name, though with no improper design. The mother was nominally the guardian of the complainant, though George W. Adams had full and complete control of everything that related to that trust; and he failed, for reasons unexplained, to make any return to the Orphans' Court of the ward's estate, or to settle any account of the guardianship, though he was surety on the guardian's bond. He occupied the double capacity of trustee and general managing agent of his mother and his sister, but, unfortunately, he failed to keep regular accounts, and it does not appear that, during the long series of years that he bore this fiduciary relation to his mother and sister, he ever rendered any account whatever of the receipts and disbursements in respect of the property in his hands. He seems to have provided for his mother and sister, and furnished them money to meet their pressing needs; but in the absence of regular and accurate accounts, it is difficult, if not impossible, to determine from what source the money was derived, or what was the real income derivable from the property. Indeed, the whole difficulty in this case has grown out of the failure or neglect of George W. Adams to keep strict and accurate accounts of his dealing with the property, and with his mother and sister. This is plainly shown by the character

of the proof produced, and by the auditor's report. If, therefore, there be possible injury done to the estate of George W. Adams, deceased, as contended by the appellants there will be, it results from the failure of the deceased to keep regular and accurate accounts of his trust. It was his duty to keep such accounts, and to be ready at all times to render them, whenever called for; and this, though he might have believed that on a fair statement of accounts he would owe nothing to his principals or *cestui que trusts.* The principle is firmly established, that trustees, guardians, executors or agents are bound to keep clear, distinct, and accurate accounts, and to render them whenever legally demanded. The *onus* is upon them to show how the estate entrusted to them has been administered or applied, and how, and to what extent, they are entitled to acquittance. If full and accurate accounts have not been kept, all presumptions are adversely indulged, and all obscurities and doubts are to be taken most strongly against them. *Freeman* v. *Fairlie,* 3 Meriv. 43; *Pearse* v. *Green,* 1 J. & Walk. 135, 140; 2 Perry on Trusts, Sec. 821. It was said by Lord Chancellor Eldon, in the leading case of *White* v. *Lincoln,* 8 Ves. 363, 369, a case of a confidential agency, that "as a general proposition nothing could be stated more mischievous, than that the court would readily act at the end of nineteen or twenty years, when no regular accounts had been kept, upon such conjectural, argumentative, and irregular grounds and documents, to supply the place of regular accounts," as in that case were made the foundation of the charge made by the agent; and the court said it must hold a very strict hand over cases of exceptions.

There was a paper or letter, or rather a copy of a paper in the form of a letter, filed with the answer of Jane L. Adams, one of the defendants, designated as "Exhibit J. L. A., No. 2," upon which the defendants place considerable reliance to support their contention. The paper is said to have

been found among the papers of George W. Adams, deceased, and it bears date the 22d of April, 1875, and it appears to have been addressed to his sister-in-law, the widow of his deceased brother, J. Q. Adams.   It was to explain to the widow of his deceased brother the relation that had existed between himself and his brother, and to justify himself, and to correct certain misunderstandings or mirepresentations to which he refers.   The paper has nothing to do with the present litigation, and is entirely *res inter alios acta*, and therefore irrelevant.   As well might the defendants attempt to introduce the mere verbal declarations of George W. Adams, in discharge of himself, made to any third party not connected with the litigation, as the attempt to introduce this written paper in self-exoneration.   The auditor and the court below held the paper to be inadmissible as against the complainant, and in their conclusion we entirely concur.   We do not perceive, however, if the paper had been treated as admissible, that the result would have been different.

We discover nothing in the evidence to justify this court in declaring that there was error in the findings of the auditor, nor in the decree of the court affirming the report of the auditor and adjudging the amount to be due.   In the absence of all accounts that should have been kept and produced, the defense is founded entirely, in the language of the chancellor in the case of *White* v. *Lincoln*, "upon conjectural, argumentative, and irregular grounds," to overcome the findings of the auditor and the concurring judgment of the court below.   We must affirm the decree.

*Decree affirmed, with costs.*